IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Billy Eugene Creech, ) | C/A No. 0:10-0108-RMG-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| Mrs. Darlene Drew, *Warden FCI Benn.*; ) | |
| Mr. Mitch Huffman, *CCRA Dallas, Tx*; ) | |
| Mr. Harley Lappin, *BOP Director*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The plaintiff, Billy Eugene Creech ("Creech"), a self-represented federal prisoner currently housed at FCI-Bennettsville of the Federal Bureau of Prisons ("BOP"), filed this civil rights action. In his Complaint, Creech contends that he is eligible for twelve months of placement in a residential re-entry center ("RRC")[1] and that BOP's decision to the contrary violates the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008). This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment. (ECF No. 18; see also ECF No. 21.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 19.) Creech filed a response in opposition (ECF No. 22), to which the defendants replied (ECF No. 23; see also ECF No. 24).

---

[1] The court notes that an RRC was formerly referred to as a "community corrections center" ("CCC").



Having carefully considered the parties' submissions and the record in this case, the court concludes that the defendants' motion should be granted.

## BACKGROUND

Creech is currently serving a federal sentence at FCI Bennettsville. He is anticipated to be released in December 2010. (See Compl., ECF No. 1 at 3; Sentence Monitoring, ECF No. 18-1 at 1.) In March 2009, Creech's Unit Team recommended Creech for six months of RRC placement. Defendant Drew, Creech's Warden, signed the recommendation and forwarded it to Defendant Huffman, the South Central Regional Community Corrections Manager, for further review. In September 2009, a community corrections referral was submitted to the Oklahoma Halfway House, an RRC, requesting placement of Creech at this facility beginning June 16, 2010. (ECF No. 18-3.) The RRC notified BOP that it would accept Creech, but not until November 12, 2010. (ECF No. 18-4.) The RRC subsequently explained that it would accept Creech for only thirty days due to his history of poor institutional adjustment and his history of escape, as well as due to overcrowding issues. (Id.) Creech is currently scheduled for release to the RRC on November 12, 2010.

In his Complaint, Creech challenges Defendant Drew's decision not to recommend Creech for twelve months of RRC placement and the decision of Defendant Lappin, or someone in his office, denying Creech's administrative appeal. Finally, he alleges that Defendant Huffman denied him the six-month period that his Unit Team recommended by approving him for only thirty days. Creech asks the court to review his record, including his educational and rehabilitative efforts over the past ten years, and to direct BOP to immediately transfer him to the Oklahoma City RRC. Creech does not seek any monetary relief.

## DISCUSSION

**A.        Subject Matter Jurisdiction**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

Creech has chosen to bring this matter as a civil rights action. Generally, the court has jurisdiction over civil rights suits seeking prospective injunctive relief to restrain ongoing unconstitutional or *ultra vires* conduct.[2] See Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984) ("It is well-established that sovereign immunity does not bar suits for specific relief

---

[2] The court observes that to the extent Creech is attempting to allege that the defendants' actions are unconstitutional pursuant to the Due Process Clause, Creech "has no due process right, protected by the Fifth Amendment, to be placed in an [RRC] earlier than [] the date on which BOP assigns him—as long as it has considered the factors set forth in [18 U.S.C.] § 3621(b)." Reid v. Dewalt, No. 09-CV-19-KKC, 2009 WL 383404, at *7 (E.D. Ky. Feb. 11, 2009). For the reasons discussed below, Creech cannot demonstrate that BOP did not consider these factors. Therefore, any allegation that the defendants' actions violated his right to due process must fail.

Page 3 of 14

*PJG*

against government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority."); see also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949) (noting that sovereign immunity does not protect federal officials acting outside their authority). However, to the extent that Creech challenges the decisions made by the named defendants for actions taken in the course of their employment with the Bureau of Prisons, the defendants correctly assert that the court lacks subject matter jurisdiction over Creech's claims because of the doctrine of sovereign immunity. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted).

Section 702 of the Administrative Procedures Act ("APA") waives sovereign immunity for certain actions. It provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. However, 18 U.S.C. § 3625 explicitly provides that 5 U.S.C. § 702, as well as certain other provisions in the APA, "do[es] not apply to any determination, decision, or order under this subchapter [which includes 18 U.S.C. §§ 3621-3626.]" 18 U.S.C. § 3625. Therefore, because Creech seeks to "undo" or challenge the decision or determination of the defendants made pursuant
Page 4 of 14

PJG

to § 3624(c)(1) to grant Creech only thirty days of RRC placement, the court finds that such review is barred by the doctrine of sovereign immunity.[3]

To the extent that Creech seeks prospective relief in the form of immediate release from his institution of incarceration, such relief is not available in a civil rights case. See Preiser v. Rodriguez, 411 U.S. 475 (1973) (holding that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release); Abella v. Rubino, 63 F.3d 1063, 1066 (11th Cir. 1995) (applying this rule to Bivens actions by federal prisoners). Rather, it must be sought through a habeas corpus proceeding against Warden Drew. See Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005); 28 U.S.C. § 2241 (expressly permitting habeas corpus suits against the warden of a petitioner's institution). However, even construing Creech's Complaint as a Petition for Writ of Habeas Corpus, he is not entitled to relief for the reasons discussed below.

---

[3] The defendants' motion also seeks dismissal to the extent that they are sued in their individual capacities. However, Creech appears to be suing the defendants only in their official capacities for actions taken in the course of their employment. This conclusion is supported by the fact that Creech solely seeks equitable or injunctive relief. See, e.g., Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n.10 (4th Cir. 2004) (stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd., 150 Fed. Appx. 389, 401 (6th Cir. 2005) (unpublished) ("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity."). Nonetheless, even if Creech's Complaint could be construed as suing these defendants in their individual capacities, for the reasons stated in the defendants' memorandum, the court finds that it lacks personal jurisdiction over Defendants Huffman and Lappin, and that Defendant Drew would be entitled to qualified immunity. (See ECF No. 18.)



B.  **Habeas Corpus**

1.  **Generally**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. See United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (citing In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (*en banc*)); United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989). While garden variety prison transfers generally do not qualify as challenges to the execution of a sentence, confinement in a traditional federal prison is "qualitatively different" from community confinement, and thus justifies utilization of § 2241 for challenging BOP decisions regarding placement in an RRC. Woodall, 432 F.3d at 243-44 (differentiating RRC placement decisions from other prison transfers and holding that placement in a RRC represents more than a simple transfer and "crosses the line beyond a challenge to, for example, garden variety prison transfer" such that it is properly raised under § 2241); see also Levine, 455 F.3d 71, 78 (stating that the "petition challenges the place of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish [RRCs] from other BOP penal facilities"); Pischke v. Litscher, 178 F.3d 497 (7th Cir. 1999) ("Habeas corpus cannot be used to challenge a transfer between prisons . . . unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about . . . 'a quantum change in the level of custody.' ").

*PJG*

2. **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of

a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

   3. **Community Placement Generally**

Community placement is provided for by 18 U.S.C. § 3624(c)(1), which provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1) (as amended by the Second Chance Act of 2007, eff. Apr. 9, 2008). Designation of such placement is based upon consideration of the following five factors, as provided in the general statute regarding prison placement and transfers:

   (1)   the resources of the facility contemplated;
   (2)   the nature and circumstances of the offense;
   (3)   the history and characteristics of the prisoner;
   (4)   any statement by the court that imposed the sentence-
         (A)   concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
         (B)   recommending a type of penal or correctional facility as appropriate; and
   (5)   any pertinent policy statement issued by the Sentencing Commission . . . .

18 U.S.C. § 3621(b). Amendments by the Second Chance Act required BOP to issue new regulations to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). The interim rules adopted by BOP, see 28 C.F.R. §§ 570.20-.22, and the statute both require BOP to determine "on an individual basis" how much time, if any, each federal prisoner should spend at an RRC. Further, they provide that the maximum amount of time that a prisoner can spend at an RRC

*PJG*

is not more than twelve months; however, there is no set minimum.  See 28 C.F.R. § 570.21 ("Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months").  "Under these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on the § 3621(b) factors."  Specter v. Dir., Fed. Bureau of Prisons, C/A No. 4:09-191-TLW, 2010 WL 883733, *5 (D.S.C. Mar. 5, 2010) (unpublished) (citing Skrzypek v. Cruz, C/A No. 08-6111 ADM/SRN, 2009 WL 465053, *2 (D. Minn. Feb. 24, 2009) (unpublished)); Garrison v. Stanberry, No. 2:08cv522, 2009 WL 1160115, *4 (E.D. Va. Apr. 29, 2009) (unpublished) ("[T]he Court only has authority to review whether the BOP properly reviewed Petitioner's case on an individualized basis and followed § 3621(b)'s five factors.").

Some courts have held that BOP may exercise its discretion to place a prisoner at an RRC for any portion of his or her sentence under § 3621(b), separate and independent from § 3624(c)'s specific requirements relating to re-entry of prisoners into the community.  See, e.g., Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008); Wedelstedt v. Wiley, 477 F.3d 1160, 1166 (10th Cir. 2007). Moreover, the Second Chance Act amended § 3624(c) specifically to provide that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621" to designate any available correctional or penal facility as the place of a prisoner's confinement.  18 U.S.C. § 3624(c)(4).

After the passage of the Second Chance Act, BOP issued a memorandum dated April 14, 2008.  (ECF No. 24.)  The memorandum instructed staff that they could not automatically deny an inmate's request for a pre-release transfer, but must give each request individualized consideration. (Id. at 2.)  The memorandum explicitly stated that categorical timeframe limitations are no longer

applicable. (Id. at 3.) Further, it limits the application of Program Statement 7310.04 by stating that the staff must not view any of the criteria in the statement as automatically precluding RRC placement. (Id. at 3-4.) The memorandum repeatedly stresses that an inmate is eligible for twelve months of placement; however, the Warden must obtain the Regional Director's approval for RRC placements of greater than six months because the BOP's "experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less." (Id. at 4.)

**4.  Discussion**

To the extent that Creech alleges alleges that the Act requires BOP to provide him with twelve months of community placement, this argument fails. While Creech may be eligible for up to twelve months of community placement, there is no *requirement* for BOP to place Creech in an RRC for any portion of his sentence. This decision is within BOP's discretion. See Miller v. Lappin, No. 7:09CV00012, 2009 WL 166873, *2 (W.D. Va. Jan. 26, 2009) (unpublished).

Creech appears to allege that Program Statement 7310.04 and the April 14 memorandum are inconsistent with the Second Chance Act and that they "restrict[] most inmates from getting the expanded possibilities for inmates to be successful after release." (ECF No. 22 at 12.) To the extent that Creech contends that these items impermissibly constrain BOP's discretion under the Second Chance Act, the court finds this argument unavailing.

As Creech was ultimately approved for less than six months of RRC placement, there is no basis to infer that the challenged memorandum—which requires the Warden to obtain the Regional Director's approval for RRC placements of greater than six months because the BOP's "experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less"—or the statement in Program Statement 7310.01—indicating that "clearly dangerous

inmates should be separated from the community until completing their sentences"—factored into or constrained BOP's decision. Even if Creech could demonstrate that the memorandum impacted BOP's decision in this matter, many courts have held that the April 14 memorandum does not violate the Second Chance Act. See, e.g., Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008) (holding that the requirement in the April 14 memorandum that "placement in an RRC for more than 180 days is 'highly unusual' and possible only with an 'extraordinary justification'" was not inconsistent with § 3621(b)); Taylor v. Jett, C/A No. 09-1632 (RHK/JJK), 2010 WL 502783, *3 (D. Minn. Feb. 5, 2010) (unpublished) (finding that the requirement of "unusual or extraordinary circumstances" for RRC placements longer than six months complies with the requirements of the Second Chance Act); Garcia v. Sanders, C/A No. 09-4188-ODW (RNB), 2009 WL 2970384, *4 (C.D. Cal. Sept. 15, 2009) (unpublished) ("Nor, in the Court's view, does [BOP's] Memo evidence a BOP policy of not giving individualized consideration to RRC placement requests and/or denying all inmates any more than six months RRC placement."); but see Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009) (holding that the BOP memoranda constrain the staff's discretion and are without support in the Second Chance Act and remanding for BOP to reconsider the petitioner's RRC placement without the limitations imposed by the memoranda).

Further, Creech's reliance on decisions such as the United States Court of Appeals for the Ninth Circuit in Rodriguez and the Tenth Circuit in Wedelstedt is unavailing. See Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008); Wedelstedt v. Wiley, 477 F.3d 1160, 1166 (10th Cir. 2007). In Rodriguez and Wedelstedt, the circuit courts held that BOP's regulations, which categorically excluded inmates with more than ten percent of their sentence remaining, was in contravention of § 3621(b), which requires federal prisoners to be considered for RRC placement on an individual

Page 11 of 14

PJG

basis after considering five factors. However, since the issuance of these decisions, BOP has promulgated new regulations that mandate individual consideration based on the § 3621(b) factors. 28 C.F.R. § 570.22; see also Garza v. Davis, 596 F.3d 1198, 1204 (10th Cir. 2010) (noting that Wedelstedt concerned different regulations).

In further support of his argument that BOP erred in failing to award him twelve months of RRC placement, Creech alleges (1) that the RRC was provided with false information concerning his current incident reports, (2) that contrary to the RRC's statements that BOP required him to be placed in an RRC for his entirety of his stay, his community corrections referral indicated that he was eligible for home confinement beginning June 12, 2006; and (3) that there is some impropriety in the timing of the additional explanation from the RRC and the filing of this suit. While Creech may dispute the substantive application of the factors in his case, there is no indication that Creech was denied individual consideration based on the § 3621(b) factors. See Specter, 2010 WL 883733 at *5 ("Under these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on the § 3621(b) factors."). "[T]he Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis." Garrison, 2009 WL 1160115 at *5. In fact, Creech's own exhibits reveal that he was considered for up to twelve months of RRC placement and after consideration of the § 3621(b) factors, as well as other information, Creech was recommended for a six-month placement. (See ECF Nos. 1-1 at 3-4, 9, 11, & 14; 22-1 at 2); see also Levine, 455 F.3d at 86 ("We read the § 3621 factors as non-exclusive, and this certainly permits the BOP to consider [other information], but such an unlisted factor cannot unilaterally and categorically

*PJG*

supplant the statutory list."); see also Rodriguez, 541 F.3d at 1187 (indicating that other factors may be considered but that the five factors in § 3621(b) may not be ignored). As the RRC would only accept Creech for thirty days due to his history and the RRC's capacity, BOP approved him for such.

Based on the foregoing, Creech has failed to identify any action taken by BOP in this matter that is unconstitutional. There is no evidence that BOP failed to consider § 3621(b)'s five factors in recommending Creech for six months of RRC placement and ultimately approving him for thirty days' placement. Further, there is no indication that Creech was categorically granted less than six months of placement in an RRC.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendants' motion (ECF No. 18) be granted. In light of this recommendation, the court recommends that Creech's "motion for a ruling" be terminated as moot. (ECF No. 32.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 22, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>901 Richland Street
>Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).